IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN BROWN,

        Plaintiff,

        vs.                Case No. 06-3003-JTM

MICHAEL GRAY, ET. AL.,

        Defendants.

MEMORANDUM AND ORDER

Brian Brown filed this *Bivens* suit against 23 federal prison officials alleging various constitutional violations under the Eighth Amendment. This court must decide whether any of his claims have merit, or whether they are subject to summary judgment for failure to exhaust administrative remedies, qualified immunity, or failure to plead personal participation, among other affirmative defenses. For the following reasons, the court holds Brown failed to show a genuine issue of material fact on all but Claim 2 and grants defendants summary judgment on those claims. Claim 2 shall be dismissed because of Brown's Rule 11 violations.

There are several motions pending in this case. The defendants have filed a Motion for Summary Judgment (Dkt. No. 325) and a Motion for Rule 11 Sanctions (Dkt. No. 344). The plaintiff responded and also filed Motions to Strike Summary Judgment of Thomas Quintana, Michael Gray, Gerald Rosalez, and Lloyd Rush (Dkt. Nos. 367, 368, 369, & 370). Additionally, plaintiff has filed the following motions: Motion for Leave to Perform Full Discovery Following Defendants Deposition of Plaintiff (Dkt. No. 268); Motion by Plaintiff for Special Hearing and Discovery (Dkt.

No. 270); Motion by Plaintiff to Order Dept of Justice to Allow Access to Legal Document (Dkt. No. 283); Motion to Clarify Court Order Doc Order 306 (Dkt. No. 313); Motion by Plaintiff for Leave to File Counter Rule 11 Sanctions (Dkt. No. 318); Renewed Motion for Discovery of Evidence and Affidavit by Plaintiff (Dkt. No. 363); Motion by Plaintiff for Leave to View Original Video (Dkt. No. 373); and Motion by Plaintiff for Appointment of Expert Witness (Dkt. No. 374).

**I. Procedural Background**

This case is nearly six years old and has an extensive procedural history worth summarizing. Brian Brown is a federal inmate presently serving concurrent life sentences for kidnaping and aggravated sexual abuse of a child at the United States Penitentiary in Welch, West Virginia. *See United States v. Brown*, 528 F.3d 1030 (8th Cir. 2008); *United States v. Brown*, 330 F.3d 1073 (8th Cir. 2003); *Brown v. Narvaiz*, No. 06-228-F, 2010 WL 3604098 (W.D. Okla. May 17, 2010). From July 31, 2002, through December 20, 2004, Brown was incarcerated at the United States Penitentiary in Leavenworth, Kansas (USP Leavenworth), where he alleges all the incidents relevant to his claims took place.

On January 3, 2006, Brown filed his Complaint under *Bivens* alleging that 12 partially-named Bureau of Prisons (BOP) officials and other "John Doe" employees violated his constitutional rights under the Eighth Amendment. *See* Dkt. No. 1. In February 2007, the court issued summons to certain defendants. *See* Dkt. Nos. 13, 16, 18-31, 34-35. On June 11, 2007, the defendants filed an Answer and filed a Motion to Dismiss Brown's official capacity claims. *See* Dkt. Nos. 40-41. Brown filed a Motion for Discovery of Evidence (Dkt. No. 54) to determine the proper names of the defendants and to discover the names of other staff. In response, the defendants

proposed serving limited discovery solely to identify Brown's claims and the people he intended to sue. On January 17, 2008, the court granted defendants' Motion to Dismiss plaintiff's official capacity claims. Dkt. No. 70. Later, on June 18, 2008, the court granted in part Brown's request for discovery and set a deadline for him to file an Amended Complaint. Dkt. No. 75. Specifically, the court ordered defendants to "prepare and serve on Plaintiff a single set of interrogatories directed 'to determine the nature of Plaintiff's claims' and 'the identities of the persons against whom he asserts claims' in this case." *Id.* at 6 (quoting Dkt. No. 58, at 2). The defendants timely complied with the court's order and served interrogatories on plaintiff. Brown filed a motion to extend his deadline to respond, which the court extended to February 27, 2009. But he did not respond until March 4, 2009, and filed his Amended Complaint on April 6, 2009. Dkt. No. 109. In total, the Amended Complaint contains 60 claims involving eight separate alleged constitutional violations against 23 defendants.

## II. Unserved Defendants

Three of the 23 defendants have not been served in this action: Matthews, Schlack, and Wheeler. On March 22, 2011, this court stated it would dismiss all claims against these defendants if they were not served by April 29, 2011. *See* Dkt. No. 306. Defense counsel provided Brown the last known addresses of all three individuals, and the United States Marshals have attempted to serve them at those addresses. Because Brown has failed to serve these three defendants, all claims against them are dismissed.

### III. Brown's Discovery Motions are Denied

Brown has filed several motions for discovery during this case. The following three motions are before the court: Motion for Leave to Perform Full Discovery (Dkt. No. 268); Motion for Leave for Special Hearing and Discovery (Dkt. No. 270); Affidavit and Renewed Motion for Discovery of Evidence (Dkt. No. 363). Additionally, he has littered his Responses to the defendants' Summary Judgment and Rule 11 motions with requests for discovery.

A party may seek discovery under Fed. R. Civ. P. 56(d) in order to respond to a summary judgment motion.[1] The Rule provides:

> **(d) When Facts Are Unavailable to the Nonmovant**. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>> (1) defer considering the motion or deny it;
>> (2) allow time to obtain affidavits or declarations or to take discovery; or
>> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d)(1)-(3). "The central tenet of Rule 56(f) is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1264 (10th Cir. 2006) (quoting *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir.2000)). The district court has wide discretion when ruling on a Rule 56(f) motion. *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990). "In this circuit, a party seeking to defer ruling on summary judgment under 56(f) must provide an affidavit 'explain[ing] why facts precluding summary judgment cannot be presented.'" *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010) (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d

---

[1]Fed. R. Civ. P. 56(f) was recently amended and is now codified in Rule 56(d). *See Turney v. DZ Bank AG Deutsche Zentral Genossenschaftsbank*, No. 09-2533, 2011 WL 13775587, at *3 n.3 (D. Kan. Apr. 12, 2011).

4

1517, 1522 (10th Cir. 1992)). "Generally, affidavits submitted under rule 56(f) are entitled to liberal treatment unless they are dilatory or meritless." *Jones v. City and County of Denver, Colo.*, 854 F.2d 1206, 1210 (10th Cir. 1988. A party must identify: "(1) 'the probable facts not available,' (2) why those facts cannot be presented currently, (3) 'what steps have been taken to obtain these facts,' and (4) 'how additional time will enable [the party] to' obtain those facts and rebut the motion for summary judgment." *Valley Forge Ins. Co.*, 616 F.3d at 1096 (quoting *Campbell*, 962 F.2d at 1522). A party may not simply state discovery is incomplete, the party must "'state with specificity how the additional material will rebut the summary judgment motion.'" *Garcia v. United States Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008) (quoting *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309-09 (10th Cir. 2007)). "[A] district court's rule 56(f) discretion is further restricted when a summary judgment motion based on qualified immunity is at issue." *Jones*, 854 F.2d at 1211. When qualified immunity is at issue "a plaintiff's 56(f) affidavit must demonstrate '*how* discovery will enable them to rebut a defendant's showing of objective reasonableness.'" *Lewis*, 903 F.2d at 758 (quoting *Jones*, 854 F.2d at 1211).

Brown seeks written discovery relevant to his claims, discovery related to defendants' Rule 11 motion, and leave to take depositions as he believes genuine issues of material fact exist and that he will suffer manifest injustice if discovery is denied. Specifically, in his affidavit, Brown seeks the following discovery: depositions of all served and unserved defendants and witnesses; inspection of many documents including the work records of all defendants, written statements of all witnesses, his medical records, his property records, his postage records, and his work records.[2] Defendants

---

[2]His request for inspection also includes:
[A]ll Laundry to SHU requests for Cleaning Supplies, Request from two months prior through to [sic] months following August 02, 2004, this includes any purchase to wherehouse [sic] "P.O." Numbers, orders [unintelligible], for "Simple Green" and "Ajax" or whatever the cleaning agent that was used,

urge this court to deny Brown's requests for discovery because there is no justifiable reason for it. Primarily, defendants argue that the facts are essentially uncontroverted, that Brown's deposition testimony forecloses many of his claims, and that many claims are barred by qualified immunity or another affirmative defense.

Most of Brown's affidavit seeks discovery based only on a generalized statement that "genuine factual issues exist," without specifying how discovery will help him create a genuine issue of material fact. Seeking discovery based on unsupported statements is not enough under Rule 56(d). *See Garcia*, 533 F.3d at 1179; *see also Rouse v. Colo. State Bd. of Parole*, 242 Fed. App'x 498, 502 (10th Cir. 2007); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (holding affidavits "mak[ing] only general and conclusory statements . . . regarding the need for more discovery" are properly denied) (alterations added). Brown also provides no basis for his requests to take the depositions of defendants and other witnesses because he does not identify the probable facts he will discover as a result of those depositions. To the extent Brown does explain the specific discovery he seeks, he still fails to convince the court that such discovery would aid him in creating a genuine issue of material fact. For example, he fails to show how the work records of the defendants, his postage records, or his work records are related to any of the claims he asserts in his Amended Complaint. In sum, Brown's largely self-serving and conclusory affidavit provides no grounds for discovery. The specific requests he does make are not likely to produce evidence creating a genuine issue of material fact. This court will not permit Brown to go on a fishing expedition for evidence where there is a high probability that it does not exist. As such, Brown has failed to meet the

---

inclusive the entire tracking policy from "P.O." Purchase to SHU", Policy Procedures. And identify all names of officers who ordered the supplies. How they ordered and when.
Dkt. No. 363, pg. 6

discovery standard under Rule 56(d), and his discovery motions are denied. The court also denies Brown's request for appointment of counsel. Brown has provided no basis for discovery, and has no basis for needing counsel. This court has denied at least six previous requests for appointment of counsel. *See* Dkt. Nos. 13, 63, 133, 164, 306, and 377.

## IV. Brown's Motion to Clarify Court Order Must Be Denied

Brown's Motion to Clarify (Dkt. No. 318) is more appropriately viewed as a motion for reconsideration of the court's March 22, 2011, Memorandum and Order (Dkt. No. 306). A motion to reconsider under Fed. R. Civ. P. 59(e) may be granted to correct manifest errors, or in light of newly discovered evidence; such a motion is directed not at initial consideration but reconsideration, and is appropriate only if the court has obviously misapprehended a party's position, the facts, or applicable law, has mistakenly decided issues not presented for determination, or the moving party produces new evidence which it could not have obtained through the exercise of due diligence. *Anderson v. United Auto Workers*, 738 F. Supp. 441, 442 (D. Kan. 1989). D. Kan R. 7.3(b) provides, "A motion to reconsider must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." A motion to reconsider is not "a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. GMC*, 846 F. Supp. 1482 (D. Kan.), *aff'd*, 43 F.3d 1484 (10th Cir. 1994). The resolution of the motion is committed to the sound discretion of the court. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

First, Brown takes issue with the court's ruling on his unexhausted claims of denied access to the courts, which occurred outside the time frame pled in the Amended Complaint. He points to

no new evidence, change in law, or manifest injustice requiring this court to alter its previous ruling. Rather, Brown essentially rehashes his previous arguments. Next, Brown expresses concern about whether he will be allowed extensions of time to file his responses to the defendants' motions. Brown also filed a Motion to Order Department of Justice to Allow Access to Legal Document (Dkt. No. 283) on February 7, 2011. In this motion, he requests the court provide him access to his legal documents at his place of incarceration and to intervene in the BOP's selection of his place of incarceration. Because this is essentially another claim unrelated to his civil complaint here, the motion is denied. On August 1, 2011, this court granted Brown until September 30, 2011, to file responses or replies to any pending motions. *See* Dkt. No. 378. In compliance with that Order, he filed the necessary responses to all the defendants' motions. Thus, to the extent his Motion to Clarify seeks reconsideration of filing deadlines, the motion is denied as moot.

Last, Brown seeks reconsideration of the court's order pertaining to the service of defendants Schlack, Wheeler, and Matthews. As noted above, Brown failed to serve these three defendants in the time granted, thus, all claims against them have been dismissed. His claims that defendants or counsel hampered his efforts to serve them are unfounded. Defendants complied with every order set forth by this court. Brown's Motion to Clarify (Dkt. No. 313) is denied in its entirety.

## V. Brown's Motions to Strike Must Be Denied

Brown has filed four Motions to Strike Summary Judgment Declarant Under Penalty of 28 USC 1746 and Rule 11 Federal Rules of Civil Procedure regarding the following individuals'

declarations: Thomas Quintana, Michael Gray,[3] Gerald Rosalez, and Lloyd Rush. *See* Dkt. Nos. 367-70. Brown moves the court to strike each named defendant's declaration from defendants' Motion for Summary Judgment (Dkt. No. 325) and defendants' Motion for Rule 11 Sanctions (Dkt. No. 344). Brown alleges defendants failed to comply with Fed. R. Civ. P. 56(e) [current Fed. R. Civ. P. 56(c)(4)] and D. Kan. R. 56.1.[4] Specifically, he contends the declarations are not based upon personal knowledge. Defendants argue the motions should be denied because all the declarations are based on personal knowledge and because Brown presents no evidence that the declarations were not based on personal knowledge.

Fed. R. Civ. P. 56(c)(4) provides:

> **Affidavits or Declarations**. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

*Id.* D. Kan. R. 56.1(d) provides:

> **Presentation of Factual Material**. All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions. Affidavits or declarations must be made on personal knowledge and by a person competent to testify to the facts stated that are admissible in evidence. Where facts referred to in an affidavit or declaration are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached.

*Id.*

"Under the personal knowledge standard, [a declaration] is inadmissible if 'the witness could

---

[3] A copy of Gray's declaration was attached to defendants' Reply in Support of its Summary Judgment Motion (Dkt. No. 380). It had not been filed at the time Brown filed his Motion to Strike Gray's Declaration. Nevertheless, the court will consider Brown's motion as it pertains to Gray's declaration attached to the Reply and to defendants' Rule 11 motion.

[4] Brown also argues the defendants violated 28 U.S.C. § 1746 and Fed. R. Civ. P. 11.

not have actually perceived or observed that which he testifies to.'" *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) (alterations added) (quoting *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)). Conclusory or self-serving declarations are insufficient. *See id.* The court must also disregard legal conclusions. *See Summit Fin. Res., L.P. v. Kathy's Gen. Store, Inc.*, No. 08-2145, 2009 WL 2106102, at *2 (D. Kan. July 16, 2009). Additionally, statements of "mere belief in [a declaration] must be disregarded." *Argo*, 452 F.3d at 1200 (quoting *Tavery v. United States*, 32 F.3d 1423, 1427 n.4 (10th Cir. 1994) (alterations added)). When enforcing Fed. R. Civ. P. 56(c)(4), the court typically does not strike entire declarations, but simply disregards portions not based on personal knowledge or that otherwise fail to comply with the Rule. *See Stevens v. Water Dist. One of Johnson County*, 561 F. Supp.2d 1224, 1231 (D. Kan. 2008).

Here, all four of Brown's motions cursorily conclude that the declarations are not based on personal knowledge, that he believes them to be false, and that they are products of defense counsels' creation. He presents no evidence showing the declarations were not based on personal knowledge. This court carefully examined each declaration and finds that each declarant testified about events based entirely on his own personal knowledge. Further, to the extent Brown "believes" the declarations are false, his motions must fail. *See Argo*, 452 F.3d at 1200. Each declaration Brown seeks to strike directly contradicts facts or claims made by Brown in this case. Although Brown may disagree with the facts testified to by the defendants, his mere disagreement is insufficient for purposes of a motion to strike. Last, Brown's assertion that the declarations were created out of whole cloth by defense counsel is baseless. He provides no evidence tending to show such a fact, and this court finds no indicia of impropriety on the part of defense counsel. Therefore, this court

10

finds the declarations of Quintana, Gray, Rosalez, and Rush are based on personal knowledge, and Brown's Motions to Strike (Dkt. Nos. 367-70) are denied.

## VI. Brown's Motion to View the Use of Force Video Is Denied

In this motion (Dkt. No. 373), Brown requests he be allowed to view the original Use of Force Video taken when he was moved from Building 63 to the Special Housing Unit (SHU) on August 3, 2004, "[r]ather than the altered and edited copy sent by the Federal Bureau of Prisons." Dkt. No. 373, pg. 1. Defendants contend the video submitted as Exhibit V of their Summary Judgment motion is a direct copy of the original VHS video and that it has not been substantively altered. The only alteration performed was to convert the VHS tape into a DVD. Defendants further contend the skips in the picture and audio are due only to the age and/or frailties of VHS videotapes in general.

The court has carefully viewed the video and finds that it does not contain "suspicious" skips,  and it does not appear that the video has been altered. The minor problems in the quality of the video are no doubt a product of the now-archaic VHS format and do not constitute fraud by the defendants. Brown has not provided any evidence showing defendants tampered with the video. Therefore, because Brown has viewed the original video on June 30, and July 28, 2011, the court denies his motion. Brown's request for appointment of pro-bono counsel contained in this motion is also denied.

## VII. Brown's Motion for the Appointment of Expert Witnesses Is Denied

On July 28, 2011, plaintiff filed a motion seeking the appointment of expert witnesses to

determine (1) if the document allegedly signed by Thomas Quintana is genuine, and (2) if the Use of Force Video is a product of fraud. Dkt. No. 374. As the court has previously found plaintiff's motion to view the original video is without merit, there is no basis for appointing an expert witness to determine if the video is a product of fraud. Thus, the motion is denied as to his request for a video expert.

A court may appoint expert witnesses under Fed. R. Evid. 706(a) on its own or on motion of the parties.[5] The decision to appoint an expert is discretionary and will only be overturned for abuse of discretion. *Cestnik v. Fed. Bureau of Prisons*, 84 Fed. App'x 51, 53 (10th Cir. 2003) (citing *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002)). Under the abuse of discretion standard, "'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Id.* (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)). "Generally, if scientific, technical, or other specialized knowledge will assist the trier-of-fact to understand the evidence or decide a fact in issue, a court will utilize expert witnesses." *Ledford v. Sullivan*, 105 F.3d 354, 358-59 (7th Cir. 1997). "The determination to appoint an expert rests solely in the Court's discretion and is to be informed by such factors as the

---

[5]Fed. R. Evid. 706(a) provides:

The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

complexity of the matters to be determined and the Court's need for a neutral, expert view." *Pabon v. Goord*, No. 99 Civ. 5869(WHP)(THK), 2001 U.S. Dist. LEXIS 10685, at *3 (S.D.N.Y. July 27, 2001) (citing *Ledford*, 105 F.3d at 358-59).

Rule 706 does state that "compensation thus fixed is payable from funds which may be provided by law in criminal cases and civil actions and proceedings involving just compensation under the fifth amendment." FED. R. EVID. 706(b). But "'[t]he plain language of section 1915 does not provide for the appointment of expert witnesses to aid an indigent litigant.'" *Blake v. Webster*, No. 10-cv-0162, 2010 WL 3908702, at *1 (D. Colo. 2010) (quoting *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008)). In fact, the court is not aware of any legal authority allowing it to appoint and/or pay an expert to assist Brown in his *Bivens* suit. "Fed. R. Evid. 706 contemplates the appointment of an expert to aid the court, not the appointment of, and compensation for, an expert to aid one of the parties." *Id*. Brown has not presented a compelling case for appointment of counsel. Even if the court has authority to fund the appointment, the claim involving the Quintana document fails for separate reasons explained below. Therefore, Brown's Motion for Appointment of an Expert (Dkt. No. 374) is properly denied. Last, Brown's request for appointment of counsel in this motion is also denied.

## VIII. Legal Standard: Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact." *Id.* Summary judgment is proper when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove [nonmovant's] claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987) (alterations added).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Summary judgment may not be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Id.* at 250-51. Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis in *Matsushita*). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

14

Finally, the court reminds the parties that summary judgment is not a "disfavored procedural shortcut." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is an important procedural vehicle "designed to secure the just, speedy and inexpensive determination of every action." *Id.* One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Id.*

## IX. Uncontroverted Facts Concerning the Claims in Brown's Amended Complaint

*A. Brown's Claims*

At all relevant times, Brown was a prisoner at USP Leavenworth. Brown's Amended Complaint (Dkt. No. 109) alleges eight separate *Bivens* claims against 23 individual defendants. The court will present the uncontroverted facts of each claim in turn.

### 1. Claim 1: "Have You Raped any Babies Yet?"

In his first Claim, Brown alleges defendants Michael Gray and Joseph Gulley subjected him to serious bodily harm when, on May 19, 2004, Gray went to Brown's cell and asked, in the presence of other inmates, "Brown Have You Raped [any] babies yet?" Dkt. No. 109, pg. 21. Sometime thereafter, Brown alleges he was attacked by two inmates while he was in a protective cell. Yet he admitted in his deposition that he suffered no physical injury as a result of Gray's comment. Further, Brown never alleged Gulley asked Brown if he had raped any babies. In fact, during his deposition Brown agreed to dismiss this claim against Gulley, and defense counsel agreed to draw up a stipulated dismissal order. After the deposition, defense counsel sent Brown a draft

copy of the stipulation. Brown has refused to agree to the dismissal.[6]

### 2. Claim 2: December 19, 2003, Conspiracy

In this Claim, Brown contends Gray and Gulley conspired to subject him to serious bodily harm on December 19, 2003, when Brown was repeatedly stabbed by one or more inmates causing him serious injury. Both Gray and Gulley deny that they conspired with anyone to commit serious bodily harm against Brown. Brown contends that Correctional Counselor, Thomas Quintana, signed a statement to support his allegation that Gray and others conspired to subject him to serious bodily harm on December 19. According to Brown, Quintana admitted to him that he had evidence supporting Brown's conspiracy claim. Brown alleges he wrote Quintana's statement as he was speaking and had him sign it on July 28, 2005. Brown attached the document as an exhibit to his deposition. *See* Dkt. No. 326, Ex. E-4. Quintana denies signing the affidavit. He further testified that he did not give Brown permission to use his name in connection with the affidavit and that he never saw it prior to being consulted about whether or not the signature was his.

During his deposition, Brown also agreed to dismiss Claim 2 against Gulley. In reliance on that agreement, the defendants did not depose Brown on this Claim as it relates to Gulley. Further, as noted above, defense counsel prepared a stipulation of dismissal of Brown's claim against Gulley, which Brown has refused to sign.

---

[6]In Brown's Response to defendants' Motion for Summary Judgment (Dkt. No. 353), he now claims it is undisputed that Michael Gray was the only one charged in Claim 1. Nevertheless, the court will analyze the claim as pled in the Amended Complaint.

### 3. Claim 3: Excessive Use of Force on August 3, 2004

In Claim 3, Brown alleges the following defendants used excessive force in transferring him from his cell in Building 63 to the SHU on August 3, 2004: Gerardo Rosalez, Lloyd Rush, Gulley, Lawrence Howard, Earl Genter, Eric Rush, Paul Rush, J. Harsha, M. Russell, N. Hall, D. Hubbard, M. Gutierrez, M. Carvajal, N. Aponte, and E.J. Gallegos. Brown contends the transfer violated his constitutional rights under the Eighth Amendment.

The decision to move Brown and his cellmate, Frank Gabaldon, to the SHU occurred because both men refused to submit to hand restraints while additional inmates were moved into their six-man cell. Rosalez assembled the Use of Force Team to accomplish the transfer. First, Brown claims Rosalez should not have assembled the Team or required him to submit to hand restraints during the move. He contends the Team used excessive force when they handcuffed him with "tight hand cuffs" and "ankle shackles." Brown further alleges defendants attempted to trip him by stepping on his shoe strings. Defendants dispute trying to trip Brown. Initially, Brown voluntarily exited his cell and submitted to restraints. Nevertheless, out of concern that Brown would engage in inappropriate behavior during the move, and because the Team was assembled, Rosalez used the Team to escort Brown from his cell to the SHU. Defendants contend they did not use force to move Brown. They admit using restraints, which are required under BOP policy. Rosalez was not a member of the Team, but he did supervise it during the move. Rosalez testified that he did not observe any BOP staff use excessive force on Brown during the move. On August 3, 2004, Harsha, Hall, Howard, Gulley, and Hubbard transferred Brown from his cell to the SHU. That same day, Guiterrez, E. Rush, P. Rush, and Russell transferred Frank Gabaldon to the SHU. Defendants L. Rush, Genter,

Carvajal, Aponte, and Gallegos did not transfer either Brown or Gabaldon to the SHU.[7]

Special Investigative Agent Jeffrey Buser is familiar with reviewing Use of Force Videos,[8] and has reviewed hundreds during the course of his employment with the BOP. The video begins with Rosalez announcing the date as Tuesday August 3, at 2:37, and the location as Building 63 at USP Leavenworth. He introduces Stephanie Wheeler as the Camera 2 operator. He states that the Team will be used to remove two inmates from their cell after they have "cuffed up." Harsha, Hall, Howard, Gulley, and Hubbard identifying themselves as the men tasked with moving Brown. All five testified that they did not use excessive force when moving Brown and did not witness any other person use excessive force. Guiterrez, E. Rush, P. Rush, and Russell identified themselves as the men who transferred Gabaldon. All four deny using excessive force to move Gabaldon or witnessing any other person use excessive force.

Brown now claims he suffered an injury to his ankles during the move when one officer stepped on his shoe laces. The court carefully viewed the video and did not observe any officer attempt to trip Brown. Brown testified that these injuries were verified eight days later by the physician's assistant. Brown also testified that the cuffs were tight and painful. After Brown arrived in his cell at the SHU and was uncuffed, Physician's Assistant Campbell asked Brown if he had any injuries. Brown said, "yeah, look." Campbell then examined Brown's wrists, which showed slight redness where the handcuffs had been. Agent Buser testified that such redness is not unusual given the length of time and distance Brown had walked during the transfer. Campbell also checked

---

[7]Brown agrees that Genter and L. Rush did not personally participate in the move. Brown disputes the involvement of Carvajal, Aponte, and Gallegos.

[8]Bureau of Prisons policies require records such as the Use of Force Video be kept in the regular course of business, be prepared by persons with personal knowledge of the facts, and be prepared at or near the time of the event. It is routine practice of USP Leavenworth to prepare Use of Force Videos.

Brown's ankles, but they were not visible in the video. Campbell completed Brown's medical record indicating "inmate has redness on his wrists and ankles from cuffs—minor erythema." Dkt. No. 326, Ex. W.

### 4. Claim 4: Deprivation of Water from August 4, to August 10, 2004

In this Claim, Brown contends Rosalez, L. Rush, Simon Jones, Tom Rush, Matthew Gum, and P. Rush deprived him of water from August 4, to August 8, 2004.[9] Brown contends defendants placed water in his cell, but that he was uncertain it was potable. Brown also alleges Rosalez deprived him of water by refusing to stop by his door and listen to his complaint from August 4, through August 10. Rosalez testified that he does not recall Brown informing him he had no access to water. Further, Rosalez denies that he knowingly or intentionally deprived Brown of water, or conspired with others to do so at any time, including the dates specified above.

Brown contends L. Rush deprived him of water because he was the officer in charge of the range, and Brown told him he needed water but L. Rush refused. L. Rush does not recall Brown complaining about water during the specified dates. He also denies knowingly or intentionally depriving Brown of water. Brown contends Jones deprived him of water because Jones told him he would fix the water but never did so. From August 4, through August 10, 2004, Jones was the Lieutenant assigned to the SHU, which consisted of Building 63 and the SHU. The SHU contained around 350 inmates, and Jones supervised about 25 officers per day. Jones does not recall Brown telling him he had no access to water during the stated time period. Jones denies knowingly or intentionally depriving Brown of water during the time period stated. Brown alleges T. Rush

---

[9]In his Amended Compliant he alleges the deprivation occurred from August 4, to August 8. In his briefings in opposition to summary judgment he now argues the deprivation lasted until August 10.

deprived him of water from August 4, through August 10, yet he admits he has no personal recollection of talking to T. Rush during that time. T. Rush was unaware Brown had no access to water and denies knowingly or intentionally depriving Brown of water. Brown alleges Gum deprived him of water because he was an officer that made rounds and Brown would ask him for water. Brown testified that Gum told him the water problem had not been fixed. Gum has no recollection that Brown told him he had no access to water, and he denies knowingly or intentionally depriving Brown of water. Last, Brown contends P. Rush deprived him of water because he knew about his request for water and that the water problem was not fixed. P. Rush does not recall Brown telling him he had no access to water, and he denies knowingly or intentionally depriving Brown of water.

### 5. Claim 5: Deprivation of Food from August 4, to August 10, 2004

In this Claim, Brown contends Rosalez, L. Rush, Jones, T. Rush, Gum, and P. Rush deprived him of edible food from August 4, to August 10, 2004. During his deposition, Brown agreed to dismiss this claim against Gum and P. Rush. In exchange for this agreement, defendants did not depose Brown on Claim 5 regarding Gum or P. Rush. Counsel informed Brown they would provide a stipulation of dismissal, and did so. Brown has refused to approve the stipulation. Neither Gum nor P. Rush recall Brown ever informing them he lacked edible food, and both testified they did not knowingly or intentionally deprive Brown of food during the time period stated. Brown contends Rosalez and Jones deprived him of edible food because they knew he had a problem with his food but did nothing. Both men do not recall Brown complaining to them about a lack of edible food, and both deny knowingly or intentionally depriving Brown of food during the time stated. Brown

20

testified that L. Rush and T. Rush deprived him of edible food by giving him sack lunches they knew had been poisoned. L. Rush and T. Rush have testified they do not recall Brown complaining about not having edible food, and both deny knowingly or intentionally depriving Brown of edible food.

Brown testified that Physician's Assistant Vineyard came to his cell on August 10, 2004, to see if he needed anything. He told her he had not eaten anything since the last time he saw her. She asked him why he had not eaten, and when she open his cell door she saw the food on the ground. Brown testified that Vineyard took the food to Jones and told him "this was wrong." As a result of her intervention and Dr. McCollum's assistance he alleges BOP staff moved him back to Building 63. Vineyard denies she saw poisoned food in Brown's cell. She also denies that she intervened with Jones on Brown's behalf. Finally, she denies that she and Dr. McCollum had Brown transferred to Building 63 on August 10, 2004, because of poisoned food.

### 6. Claim 6: Failure to Protect from Harm on August 15, 2004

In this Claim, Brown claims Dale Thompson failed to protect him from harm on August 15, 2004, by allowing, or ordering, inmate orderlies to attack him. Specifically, Brown contends inmates threw a lit towel into his cell. Thompson does not recall this incident and denies knowingly or intentionally exposing Brown to a substantial risk of harm on August 15, 2004. He also denies conspiring with anyone to expose Brown to a substantial risk of harm.

### 7. Claim 7: Denying Access to Property and Blocking Access to Court

In Claim 7, Brown contends Rosalez and Genter denied him access to his property, which also denied him access to this court. Specifically, Brown testified that Rosalez and Genter blocked

his access to this court by removing property from his cell on August 3, 2004. At the time, Rosalez was a Lieutenant, and he was not responsible for inmate property. A corrections officer was assigned as the Property Officer for Building 63, and was responsible for inmate property issues. Rosalez only became involved in property issues if the inmate filed an administrative remedy or tort claim. Rosalez does not remember moving Brown's property on August 3, 2004. Further, he denies removing Brown's property with the intention of blocking his access to the court. Genter was the Property Officer for Building 63 on August 3, 2004. Among his responsibilities was to allow inmates up to one cubic foot of personal property in their cells. If an inmate had more than one cubic foot of personal property, he removed the legal property to storage. Genter does not recall whether he removed Brown's property on August 3, 2004. However, he denies he removed Brown's property with the intention of blocking his access to the court.

### 8. Claim 8: Attorney's Fees

Brown's last Claim is for attorney's fees from each defendant. In his deposition, Brown admitted he could not recover attorney's fees in this case because he is not represented by an attorney. At all pertinent times Brown was not represented by an attorney in this case.

### B. Brown's Administrative Remedies

#### 1. Procedure

The BOP has a four-part administrative remedy program used to address federal inmates' concerns with any aspect of his or her confinement. *See* 28 C.F.R. part 542. Under the program, an inmate must first attempt informal resolution of the complaint. *Id.* § 542.13. If unsuccessful, he may

file his complaint with the Warden of the facility within 20 days. *Id.* § 542.14. Inmate complaints are limited to a "single complaint or a reasonable number of closely related issues." *Id.* § 542.14(c)(2). If an inmate is unsatisfied with the Warden's response he may appeal to the appropriate Regional Director (RD) within 20 days of the Warden's response. *Id.* § 542.15. If the inmate is unsatisfied with the RD's response, he may appeal to the General Counsel's Office (Central Office) within 30 days of the RD's response. *Id.* The RD has 30 days to investigate and respond; the Central Office has 40 days. *Id.* § 542.18.

One exception to the standard procedure is a complaint involving "sensitive" issues. If an inmate reasonably believes the issue he has is "sensitive" and that "the inmate's safety or well being would be placed in danger if the request became known at the institution," he may submit his initial complaint to the RD. *Id.* § 542.14(d). This bypasses the informal resolution and institutional levels, and the Regional Administrative Remedy Coordinator will determine whether the request qualifies as "sensitive." *Id.* If not, the complaint will be rejected and returned to the inmate with instructions to file at the institutional level. *Id.*

An inmate's complaint at the institutional level or on appeal may be rejected for noncompliance with the requirements of the administrative remedy process. If the defect can be cured, the inmate will be given an opportunity to do so and to resubmit his complaint. If the inmate is not given an opportunity to fix his complaint he may appeal to the next level. Generally, an inmate has not exhausted his remedies until he has sought review and received a final substantive response at all three levels.

### 2. Claims 1 and 2

On June 14, 2004, the Warden at USP Leavenworth received Administrative Remedy 337717-F1 from Brown, in which he alleged staff misconduct. According to Brown, on May 19, 2004, Gray went to cell 215 in Building 63 and yelled, "Mr. Brown have you raped any babies yet?" On June 29, 2004, the Warden responded by stating his claim was being investigated but otherwise denied his complaint. Brown appealed to the RD for the North Central Region and to the Central Office, both of which denied his appeals.

### 3. Claim 3

On August 10, 2004, Brown attempted to file Administrative Remedy 347735-R1, as a "sensitive" remedy with the RD. In his complaint, he alleged excessive use of force during his move from Building 63 to the SHU. On August 16, the RD rejected his complaint because it was not deemed sensitive. Brown appealed the rejection to the Central Office. On September 24, the Central Office concurred with the RD and rejected his appeal.

On September 7, 2004, Brown submitted Administrative Remedy 350508-F1 to the Warden at USP Leavenworth alleging he was assaulted by prison staff on August 3, 2004, during his move from Building 63 to the SHU. The Warden responded on September 23, and plaintiff appealed his response to the RD on September 30. The RD denied his appeal on October 27, 2004. On December 13, 2004, plaintiff tried to appeal the RD's decision, but the Central Office rejected his appeal on December 23, because it was untimely. Additionally, plaintiff was informed he needed to provide staff verification on BOP letterhead explaining why the untimeliness was not his fault. Brown attempted to re-file his Central Office appeal on March 22, 2005. Again, it was denied as untimely,

24

and he was given another chance to submit proof that the untimeliness was not his fault. Brown never resubmitted his appeal to the Central Office showing the reason for his untimeliness.

### 4. Claims 4 and 5

Brown filed Administrative Remedy 348490-F1 with the Warden of USP Leavenworth on August 20, 2004. In his complaint he stated:

> On August 2, 2004, Inmate was placed in Dis[ciplinary] Seg[regation] following an Assult [sic] ordered by Lt. Rosalus, while in SHU Inmate and Cellmate was deprived of water, then office Rush refusing to turn on water, as No. 1 and Lt. Jones ordered, both inmates on Bag Lunches (1 day), the C.O.'s Officer Gum, S.O. Rush, Lt. Jones, told Inmates that there [sic] food was intentionally poisoned, upon inspection of the food, it had powder + other substance unknown, Both the inmates refused to eat, on 8-8-04, still not have eaten, P.A. Vineyard began Checks Concerned about a [unintelligible] "Food Strike Situation," Inmate <u>never declared food strike</u>, officer deliberately tampered with food cause sickness and death, Inmate on 8/10/04 requested to change religion in order to receive a common-fare meal to protect from poisoning, or Double trays, in case one gets poisoned, the other could get eaten to show [unintelligible], otherwise evidence, as of this date food is being <u>refused to inmate</u>.

Dkt. No. 326, Ex. AA. Brown sought an investigation and punishment of staff and asked to be switched to Common Fare or to receive double trays. In an attachment to his complaint he provided more details. Specifically, he alleged that he and his cellmate were without water for several hours on August 4, 2004, after the move. He also alleged he was refused an evening meal on August 4, and a morning meal on August 5. Brown further contends that six bag lunches were thrown into the cell at lunch on August 5, and a staff member told him the meals were poisoned. Brown alleges the food had cleaning supplies on it and other unknown substances. He contends a medical provider verified the problems with the food and had him transferred from the SHU to Building 63. Last, he claims a staff member told him his food would continue to be poisoned.

25

The Warden responded to his complaint on September 3, and stated: "All inmates are afforded unadulterated and appropriate meals, water, and other beverages to ensure adequate nutrition. However, your complaint will be appropriately reviewed. Once the review is complete, and if any merit to your complaint is found, proper action will be taken." Dkt. No. 326, Ex. AA. Brown appealed this response to the RD and to the Central Office. Both entities also stated their intent to investigate the matter. During his deposition, Brown testified that Administrative Remedy 348490 was intended to exhaust his administrative remedies against all the officers on the Use of Force Team that transferred him from Building 63 to the SHU on August 3, 2004.

### 5. Claim 6

On September 10, 2004, Brown submitted Administrative Remedy 351049-F1 to the Warden of USP Leavenworth. In his complaint he alleged two inmate orderlies attacked him with a burning towel on August 15, 2004. Brown also alleged Thompson either allowed, or ordered, the attack. Brown further alleged the incident amounted to a "hate crime" because he had recently expressed a preference for the Jewish faith. He requested an investigation, a transfer from USP Leavenworth, and money damages. The Warden responded on September 30, 2004, and explained that although Brown had been issued a disciplinary report for starting a fire in his cell, the disciplinary process would be suspended pending review of Brown's allegations. The Warden also stated that Brown's housing at USP Leavenworth was adequate and that he would not be transferred at that time. Brown timely appealed this decision to the RD and the Central Office; both appeals were denied.

26

6. Claim 7

On September 9, 2004, Brown submitted Administrative Remedy 350986-F1 to the Warden of USP Leavenworth. The BOP has not been able to locate the records for this complaint, but the BOP's national database called "Sentry,"[10] summarized it as "[inmate] complains about destruction of personal property." Dkt. No. 326, Ex. AA. The Warden denied the complaint on September 17. Brown appealed to the RD and the Central Office, both of which denied his appeals.

## X. Legal Conclusions

Defendants seek summary judgment on 53 of the 54 separate claims asserted by Brown against the 20 served defendants. Defendants present several legal arguments supporting their motion. Because many of the relevant legal standards apply to more than one claim, the court will set out those legal standards at the outset and will discuss others when applicable to individual claims. Defendants also seek summary judgment on several claims based on settlement agreements reached with Brown during his deposition. Defendants argue the court must enforce the parties' settlement agreements even though Brown did not sign the stipulated dismissals. Defendants also argue the court must enforce the parties' agreements under the doctrine of promissory estoppel. Because the court finds Brown's claims are subject to summary judgment or dismissal for other reasons, the court will not determine the effect of the settlement agreements on Brown's claims. Further, because the court will not consider the possible effect of the settlement agreements,

---

[10]Since July 1990, the BOP has maintained information related to administrative complaints filed by inmates under the BOP's Administrative Remedy Program, the Sentry national database. Sentry summarizes the subject matter of each complaint or appeal in an effort to track all inmate complaints and appeals. Each complaint is logged at the facility in which the complaint was received and given a unique "Remedy ID Number." Dkt. No. 326, Ex. AA.

Brown's Motion for Leave to File Counter Rule 11 Sanctions (Dkt. No. 318) based on defense counsel's alleged threats of his failure to sign the agreements is denied as moot.

### A. Conclusory Allegations Insufficient to Create a Genuine Issue of Material Fact

Because plaintiff is proceeding pro se, this court construes his arguments liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

"To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Skrzypczak v. Roman Catholic Diocese*, 611 F.3d 1238, 1244 (10th Cir. 2010) (quoting *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)). "The purpose of a summary judgment motion . . . is to determine whether there is evidence to support a party's factual claim. Unsupported conclusory allegations thus do not create a genuine issue of fact." *L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000). To the extent Brown relies on conclusory allegations, the court will treat the factual issue as uncontroverted. Further, Brown cannot avoid summary judgment by asserting things he "believes" to be true. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) ("In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not

escape summary judgment in the mere hope that something will turn up at trial.").

### B. Bivens Standard

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, the Supreme Court established a direct federal cause of action under the Constitution against federal officials for violations of federal constitutional rights. 403 U.S. 388 (1971). A *Bivens* claim is analogous to one under § 1983. *Springer v. Albin*, 398 Fed. App'x 427, 435 n.5 (10th Cir. 2010).[11] To state a claim under § 1983 a plaintiff must contend that the defendants *personally participated* in the alleged constitutional violations. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993); *see also Persaud v. Doe*, 213 Fed. App'x 740, 743 (10th Cir. 2007). "A supervisor is not liable under § 1983 unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise." *Butler*, 992 F.2d at 1055. "A plaintiff may therefore succeed in a [*Bivens*] suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (alterations added). "There is no liability, under a respondeat superior theory, of an individual's supervisor or employer who is not alleged to have personally participated in the incident." *Green v. Corrections Corp. of Am.*, No. 10-3062, 2010 WL 1643770, at *2 (D. Kan. Apr. 22, 2010) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976); *Kite v. Kelley*,

---

[11]Because a *Bivens* suit and a § 1983 suit are equivalent, this court cites to both *Bivens* and § 1983 cases as authority. *See Springer v. Albin*, 398 Fed. App'x 427, 435 n.5 (10th Cir. 2010).

546 F.2d 334, 337 (10th Cir. 1976)).

### C. Exhaustion of Administrative Remedies

In 1995, Congress enacted the Prison Litigation Reform Act (PLRA) to, among other things, mandate early judicial screening of prisoner complaints and require exhaustion of those complaints prior to filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202 (2007); 42 U.S.C. § 1997e *et seq*. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Koch v. Neubarth*, No. 09-CV-00116, 2010 WL 1791141, at *1 (E.D. Cal. May 3, 2010). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 210-11. Exhaustion of administrative remedies is "no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Proper exhaustion requires "*compliance with the agency's deadlines and other critical procedural rules*." *Id.* at 90 (emphasis added). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). The exhaustion requirement functions "to reduce the quantity and improve the quality of prisoner suits by (1) allowing prison officials an opportunity to satisfy the inmate's complaint—thus obviating the need for litigation; (2) filtering out some frivolous claims; and (3) creating an administrative record that facilitates review of cases that are ultimately brought to court." *Whitington v. Ortiz*, 472 F.3d 804, 807 (10th Cir. 2007).

A prisoner's failure to satisfy § 1997e(a)'s exhaustion requirement is an affirmative defense that must be pled and proved by the defendant. *Jones*, 549 U.S. at 216. To sustain that burden, a defendant must prove "administrative remedies were, in fact, available" and that plaintiff "failed to exhaust these remedies." *Purkey v. CCA Detention Ctr.*, 263 Fed. App'x 723, 726 (10th Cir. 2008). If the defendant meets this burden, the burden shifts to plaintiff to demonstrate the existence of a disputed material fact. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). However, a defendant waives the exhaustion requirement if it considers plaintiff's defective filings on the merits. *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). There is also an exception to the exhaustion requirement if the plaintiff has been prevented from filing a grievance or the facility failed to answer the grievance. *Baldauf v. Garoutte*, 137 Fed. App'x 137, 141 (10th Cir. 2005) ("[I]f a prisoner is hindered from utilizing the grievance procedure (it) is *not available*.") (emphasis added). The burden of proving exhaustion was impeded is on the plaintiff. *See McKeighan v. Corrections Corp. of Am.*, No. 08-3173, 2010 WL 3913227, at *6 (D. Kan. Sept. 30, 2010).


*D. Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When determining whether an individual is entitled to qualified immunity, the court must determine (1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether that right was clearly established at the time of

31

the defendant's alleged misconduct. *Id.* at 815-16; *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196

(10th Cir. 2010) ("'[T]he plaintiff has the heavy burden of establishing: (1) that the defendant's

actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly

established at the time of the defendant's actions.'") (quoting *Scott v. Hern*, 216 F.3d 891, 910 (10th

Cir. 2000)). However, this court will review the evidence in the light most favorable to the plaintiff.

*See Fletcher v. Burkhalter*, 605 F.3d 1091, 1096 (10th Cir. 2010).


   *E. Eighth Amendment Cruel and Unusual Punishment Standard and Excessive Use of Force*

   "[T]he treatment a prisoner receives in prison and the conditions under which he is confined

are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)

(citation omitted). The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor

excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. Amend. VIII.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate

violates the Eighth Amendment." *Farmer*, 511 U.S. at 828 (quoting *Helling v. McKinney*, 509 U.S.

25 (1993)).  The test for deliberate indifference is both objective and subjective. *Martinez v. Beggs*,

563 F.3d 1082, 1088 (10th Cir. 2009). "The objective component of the test is met if the 'harm

suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual

Punishment Clause' of the Eighth Amendment." *Id.* (quoting *Mata v. Saiz*, 427 F.3d 745, 752-53

(10th Cir. 2005)).

   "To prevail on the subjective component, the prisoner must show that the defendants 'knew

[s]he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable

measures to abate it.'" *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (quoting

*Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006)). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Essentially, deliberate indifference is the equivalent of recklessly disregarding a substantial risk of serious harm. *Id.* at 836 ("It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."). But "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Moreover "the Supreme Court has cautioned that an obvious risk cannot conclusively establish an inference that the official subjectively knew of the substantial risk of harm, because 'a prison official may show that the obvious escaped him.'" *Martinez*, 563 F.3d at 1089 (quoting *Farmer*, 511 U.S. at 843 n.8). Last, the subjective component requires the prison official to disregard the specific risk of harm claimed by the prisoner, not just the general risk of serious harm. *Id.* at 1089-90 (citing *Estate of Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994)) (holding plaintiffs were required to show defendants were deliberately indifferent to prisoner's specific risk of suicide (cause of death) not merely the risks of intoxication (symptoms prisoner exhibited)).

The Tenth Circuit has clearly set forth the standards used when evaluating an excessive force claim under the Eighth Amendment:

> To succeed on his excessive use of force claim, plaintiff must show (1) that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation; and (2) that defendants acted with a sufficiently culpable state of mind. *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003). "The objective component

33

> . . . is contextual and responsive to contemporary standards of decency. The subjective element . . . turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (citation and quotation marks omitted).

*Norton v. City of Marietta, Okla.*, 432 F.3d 1145, 1154 (10th Cir. 2005).

### F. Claim 1 Fails on the Merits

Brown asserts Claim 1 against defendants Gray and Gulley for subjecting him to serious bodily harm when Gray asked Brown, in the presence of other inmates, "Brown have You Raped [any] babies yet?" Dkt. No. 109, pg. 21. First, Brown does not allege Gulley had any personal involvement in this claim. Therefore, without alleging personal participation, Claim 1 must fail as to Gulley. As to defendant Gray, defendants argue the claim must fail because Brown failed to show he was injured as a result of the question. In his deposition, Brown testified as follows:

> Q: All right. And now I'm asking you, okay. He said that, do you have any physical injury that you know of since May 19, 2004, that was caused by him [Gray] making that statement?
>
> A. No.

Dkt. No. 326, Ex. E, pg. 69. By his own admission, he suffered no injury as a result of Gray's question. But "[t]he Supreme Court has rejected the notion that the Eighth Amendment does not reach official conduct that 'is sure or very likely to cause' serious injury at the hands of other inmates." *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001) (quoting *Helling*, 509 U.S. at 33); *see also Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir.1980) ("[A]n inmate does have a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates. Moreover, he does not need to wait until he is actually assaulted before obtaining relief.") (citations omitted). In *Benefield*, the prisoner alleged his Eighth Amendment rights were violated when a

34

prison guard circulated a rumor that he was a "snitch." 241 F.3d at 1269-70. The Tenth Circuit held

that this was sufficient to state a claim under the Eighth Amendment, even though the disclosure had

not led to an attack. *Id.* at 1272. Similarly, as the Tenth Circuit recognized in one of Brown's

previous cases, being labeled a child molester by a guard is sufficient to meet the objective

component of the deliberate indifference standard even though he had not yet been injured as a result

of the label. *Brown v. Narvais*, 265 Fed. App'x 734, 735-36 (10th Cir. 2008). Therefore, the

defendants' argument that because plaintiff suffered no physical harm his claim must fail, is not

supported by Tenth Circuit precedent.

Yet the *Narvais* court also carefully narrowed the import of its holding by stating the

following:

> Of course, plaintiff may be unable to substantiate his allegations, or defendant may
> be able to show additional circumstances that negate or neutralize the danger created
> by the disclosure. In either case, defendant could successfully defend against the suit
> on summary judgment. Again, consistent with *Benefield*, we simply hold that this
> action was not subject to dismissal at the pleading stage.

*Id.* at 736. While plaintiff's claim would satisfy the pleading standard at the motion to dismiss stage,

he utterly fails to establish a substantial risk of harm necessary to meet the objective standard of the

deliberate indifference test at summary judgment. From the date of Gray's question until the

present—over six and one-half years—Brown has suffered no injuries as a result of the question.

Brown contends he needs time to take discovery on this issue to show a genuine issue of fact

exists. Additionally, he claims Gray ordered inmates to assault him. Brown's arguments fail. First,

he has no need for discovery, as any evidence relating to injury or substantial risk of injury are well

within his own personal knowledge. Moreover, the conclusory allegation that Gray ordered Brown

assaulted is not sufficient to controvert the fact that Brown was not injured as a result of Gray's

question. Therefore, Brown has failed to support his allegations under Claim 1 as to defendant Gray

and summary judgment on this claim is granted.[12]


>    *G. A Factual Dispute Remains as to Defendant Gray on Claim 2*

In Claim 2, Brown alleges Gulley and Gray conspired to murder him on December 19, 2003.

Brown contends that on May 15, 2004, Gray admitted to him that he conspired to have certain

inmates stab Brown on December 19. Both Gulley and Gray deny conspiring with anyone to have

Brown stabbed. As to Gulley, Brown's claim must fail as he never alleges personal participation by

Gulley in any conspiracy. Nevertheless, a factual dispute remains as to whether Gray conspired to

have Brown stabbed. Thus, summary judgment on Claim 2 is denied as to Gray.


>    *H. Claim 3 Fails Because Brown Did Not Exhaust Administrative Remedies, Did not Plead*
>    *Personal Participation, and Defendants Did Not Violate His Rights Under the Eighth*
>    *Amendment*

Brown brings Claim 3 against the following defendants for excessive use of force in

transporting him from Building 63 to the SHU on August 3, 2004: Rosalez, Harsha, Russell, Hall,

Hubbard, P. Rush, Gutierrez, Carvajal, Aponte, Gallegos, Howard, Gulley, E. Rush, and Genter.

First, defendants argue they are entitled to summary judgment on this claim because he failed to

exhaust his administrative remedies. After initially attempting to file a "sensitive" complaint, Brown

filed Administrative Remedy 350508-F1 with the Warden at USP Leavenworth alleging assault

based on the transport from Building 63 to the SHU. The Warden responded on September 23, 2004,

---

[12]In the absence of physical injury, a plaintiff may still have a claim under the Eighth Amendment if he suffered psychological harm. *See Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001). However, as noted above plaintiff failed to substantiate his claims as to any injury or substantial risk of injury as a result of Gray's question.

and Brown appealed on September 30. The RD denied his appeal on October 27, and he attempted to appeal to the Central Office on December 23. The Central Office rejected his appeal as untimely and gave him the opportunity to show why the delay was not his fault. On March 22, 2005, Brown attempted to file another Central Office appeal, which was denied as untimely. Brown never resubmitted his appeal showing his untimeliness was not his fault. Defendants have proved that administrative remedies were available and that Brown failed to exhaust them by filing an untimely appeal to the Central Office. *See Purkey*, 263 Fed. App'x at 726.

Brown does not dispute his failure to exhaust Administrative Remedy 350508-F1, rather he argues he exhausted his remedies as to Claim 3 in Administrative Remedy 348490-F1. In this complaint, Brown primarily asserted he was being deprived of water and that his food had been poisoned. *See supra* Section IX.B.4. Brown states he was placed in segregation on August 2, 2004, following an "Assult" [sic]. This vague reference was not sufficient to put the Warden on notice that Brown was claiming the above-mentioned defendants used excessive force when transporting him on August 3. Additionally, both the RD and Central Office characterized Brown's claim in Administrative Remedy 348490-F1, as one involving deprivation of water and poisoned food. Neither mentioned anything about excessive use of force. And Brown never objected to this characterization throughout the appeals. Therefore, Brown failed to exhaust his administrative remedies on Claim 3, and summary judgment is appropriate.

Even if Brown had exhausted his administrative remedies, summary judgment is appropriate for two separate reasons. First, several of the defendants did not personally participate in moving him from Building 63 to the SHU. The uncontroverted facts, including the video and personal declarations, show that Russell, P. Rush, Gutierrez, Carvajal, Aponte, Gallegos, Genter, and E. Rush

did not participate in the transport.[13] Therefore, with personal participation lacking, Claim 3 fails as a matter of law as to these defendants.

Defendants Harsha, Hall, Howard, Gulley, and Hubbard personally transported Brown from Building 63 to the SHU on the date in question, however, summary judgment is proper as to these defendants because the uncontroverted facts show they did not use excessive force. First, the video shows defendants handcuffing Brown and placing him in leg restraints then walking with him for 27 minutes from Building 63 to the SHU. At no point in the video do any of the defendants use excessive force to move Brown. In fact, Brown cooperated at every stage of the move. The main use of force applied to him were the handcuffs and leg restraints. Primarily, Brown alleges he was injured by unnecessarily tight application of the handcuffs and leg restraints.

The standard applicable to an excessive use of force claim under the Eighth Amendment asks "whether the 'force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010) (quoting *Hudson v. McMillian*, 503 U.S . 1, 6-7 (1992)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The use of leg and wrist restraints are reasonable actions authorized under BOP policy for Use of Force moves. Dkt. No. 326, Ex. G, ¶¶ 2-3. At the end of the move, Brown complained of soreness in his wrists and ankles. The video shows minor redness on the wrists, but does not show his ankles.

---

[13]Defendants E. Rush, P. Rush, Gutierrez, and Russell transported Brown's cellmate Frank Gabaldon from Building 63 to the SHU on August 3, 2004. Plaintiff lacks standing to assert a constitutional violation on Gabaldon's behalf. *See Swoboda v. Dubach*, 992 F.2d 286, 289-90 (10th Cir. 1993). Carvajal, Aponte, Gallegos, and Genter did not personally participate in moving either Brown or Gabaldon on August 3, 2004.

Physician's Assistant Campbell examined Brown's wrist and ankles and later wrote in his medical report that "inmate has redness on his wrists and ankles from cuffs—minor erythema." Dkt. No. 326, Ex. W. Such minor redness is to be expected on a 27 minute walk in arm and leg restraints and constitutes *de minimis* physical force. The defendants did not use restraints to "maliciously and sadistically cause harm." *See Hudson*, 503 U.S. at 6-7. Therefore, Claim 3 fails on the merits and the participating defendants are entitled to summary judgment.

### *I. Brown Failed to Exhaust His Administrative Remedies and No Genuine Issue of Material Fact Exists on His Deprivation of Water Claim*

In Claim 4, Brown alleges defendants Rosalez, L. Rush, Jones, T. Rush, Gum, and P. Rush deprived him of water from August 4, through August 10, 2004. Defendants argue Brown failed to exhaust his administrative remedies and that the claim fails as a matter of law. First, defendants argue his claim was exhausted only to the extent alleged in his administrative remedy. "'A litigant's failure to raise issues during an administrative appeal can constitute a failure to exhaust administrative remedies.'" *Paulino v. (FNU) (LNU)*, 203 Fed. App'x 942, 943 (10th Cir. 2006) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 956 (10th Cir. 2001)). "'[A] grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally.'" *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006)). "'[T]he presence of unexhausted claims in [a prisoner's] complaint require[s] the district court to dismiss his action in its entirety without prejudice.'" *Id.* at 944 (quoting *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189 (10th Cir. 2004)). In Administrative Remedy 348490-F1, Brown alleges he was denied water for a couple of hours on August 4, but that it was turned on the same day. Therefore, Brown's unexhausted claim covering August 5, to August

39

10, must fail. *See Paulino*, 203 Fed. App'x at 944.

Brown's remaining allegation is that he was denied water for a couple of hours. Defendants argue this claim fails because an alleged lack of water for a couple hours does not constitute an Eighth Amendment violation. The Eighth Amendment "does not mandate comfortable prisons" and conditions may even be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981). Brown's deprivation of water claim depends on "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *See Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). Substantial deprivations of shelter, food, drinking water, and sanitation may constitute an Eighth Amendment violation even if the duration is short. *See id.* The Tenth Circuit has found the following deprivations or conditions sufficient to state an Eighth Amendment violation:

> [D]enying a prisoner food or water for more than 24 hours during transport between prisons and restraining him with "a stun belt, belly chains, handcuffs, and a black box covering the handcuffs, which prevented him from accessing the food and water" provided to other prisoners, *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); denying a prisoner all outdoor exercise for three years, *Fogle v. Pierson*, 435 F.3d 1252, 1259–60 (10th Cir. 2006); exposing a prisoner "to other inmates' urine and feces via . . . standing water and also to close confinement with the odor of his own accumulated urine," *DeSpain v. Uphoff*, 264 F.3d 965, 974–75 (10th Cir. 2001); and requiring a prisoner to be in a feces-covered cell for three days, *McBride*, 240 F.3d at 1292.

*Lewis v. McKinley County Bd. of County Comm'rs.*, 425 Fed. App'x 723, 727-28 (10th Cir. 2011). On the other hand, the Tenth Circuit has found the following allegations insufficient: "a prisoner placed in his bare feet in a cell without a toilet for five hours, *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003); a slippery shower caused by standing water, *Reynolds v. Powell*, 370 F.3d 1028, 1031–32 (10th Cir. 2004); and a prisoner's claim that he required a double-portion diet

40

where his doctors differed on his need for such a diet, *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002)." *Id.* at 728.

Here, Brown alleges that he was deprived of water for only a couple of hours and then the water was turned on. Such a short period of time is insufficient to state a claim under the Eighth Amendment. *See, e.g.*, *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (stating "deprivations of fresh water and access to the toilet for a 20-hour period, while harsh, were not cruel and unusual punishment") (citing *Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir. 1987)); *Gunn v. Tilton*, No. CV 08-1039, 2011 WL 1121949, *4 (E.D. Cal. Mar. 23, 2011) (holding that outside detention for approximately 6 hours without water and 3-4 hours without restrooms was not sufficiently serious to support an Eighth Amendment claim); *Hernandez v. Battaglia*, 673 F. Supp.2d 673, 676-78 (N.D. Ill. 2009) (holding a inmate handcuffed in a prison yard without access to water, food, or toilets in 80-85 degree temperatures for up to five hours was not an Eighth Amendment violation); *Minifield v. Butikofer*, 298 F. Supp.2d 900, 904 (N.D. Cal. 2004) (holding five-hour deprivation of water was not an Eighth Amendment violation). Further, even if such a claim did establish an Eighth Amendment violation, plaintiff failed to establish that such a right was clearly established, thus, entitling defendants to qualified immunity. *See PJ ex rel. Jensen*, 603 F.3d at 1196.

### J. Brown Failed to Exhaust Administrative Remedies and Failed to Allege Personal Participation on Claim 5

In this claim, Brown alleges defendants Rosalez, L. Rush, Jones, T. Rush, Gum, and P. Rush deprived him of food from August 4, to August 10, 2004. Defendants first argue his claim must be dismissed as to August 9, and 10, because his Administrative Remedy 348490-F1 alleged a deprivation from August 4, to August 8, only. For the same reasons noted above, Brown's claim is

41

dismissed to the extent not covered in his administrative remedy. *See Paulino*, 203 Fed. App'x at 944. Defendants also argue Brown's claim fails on the merits. Specifically, defendants argue Brown cannot show that any of the defendants personally participated in denying him edible food during the dates listed. All defendants have denied depriving Brown of food, and have denied they poisoned his food. The only evidence Brown musters in an attempt to controvert defendants' facts is his testimony that Physician's Assistant Vineyard came to his cell on August 10, 2004, and observed the poisoned food and reported it to an officer. However, Vineyard categorically denies she observed poisoned food provided to Brown on those days or that she spoke to any corrections officers about poisoned food. Without sufficient evidence to controvert defendants' facts, Brown, in his Response, requests "that the Court appoint Counsel to aid in Discovery and keep Defendants from alleging that Brown made up evidence. To Discover Genuine issues of fact." Dkt. No. 353, pg. 158.

The defendants have produced evidence showing they did not poison or otherwise deprive Brown of food from August 4, to August 10, 2004. Brown's conclusory allegations are not enough to avoid summary judgment on Claim 5. Further, as noted several times throughout this Order and this case, Brown has not shown why he needs time to take discovery on his claims. Therefore, Claim 5 fails, and defendants are entitled to summary judgment.

### K. Brown Failed to Show Thompson Ordered or Allowed Other Inmates to Throw A Burning Towel into His Cell

Claim 6 involves a discrete allegation against defendant Thompson. Brown alleges Thompson either allowed or ordered an attack on Brown in which two inmates threw a burning towel into his cell on August 15, 2004. Defendants claim Brown failed to show Thompson personally participated in the attack in any way. Thompson denies conspiring with inmates to injure

Brown.   Brown's only evidence supporting this claim is his own speculative testimony that Thompson conspired with other inmates to injure him. At the summary judgment stage, plaintiff must come forward with more than conclusory allegations; plaintiff must present at least a colorable showing of liability creating a genuine issue of material fact. *See Anderson*, 477 U.S. at 250-51; *see also Skrzypczak*, 611 F.3d at 1244. Brown's request for discovery must also fail, for the reasons noted above. Therefore, defendants are entitled to summary judgment on Claim 6.

### *L. The Uncontroverted Facts Show Brown Was Not Deprived of Access to the Courts*

In his last substantive claim, Brown alleges defendants Rosalez and Genter denied him access to his property, which also denied him access to the court. Specifically, Brown testified that Rosalez and Genter blocked his access to this court by removing property from his cell on August 3, 2004. Defendants argue this claim must fail because Brown cannot demonstrate any injury.

"The constitutional right of access to the courts is guaranteed by the Due Process Clauses of the Fifth and Fourteenth Amendments." *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). In *Bounds v. Smith*, the Supreme Court held that "the fundamental constitutional right of access to courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). To establish a claim of denial of access to the courts an inmate must demonstrate actual injury. *Lewis v. Casey*, 518 U.S. 350, 351 (1996) ("[T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."). "Actual injury consists of 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a

filing deadline or to present a claim.'" *Mashaney v. Call*, No. 09-3105, 2010 WL 5463879, at *9 (D. Kan. Dec. 29, 2010) (quoting *Lewis*, 518 U.S. at 348). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. However, "[t]he inmate can satisfy this standing requirement by showing the defendant 'hindered [his] efforts to pursue a nonfrivolous claim.'" *Harmon v. Keith*, 383 Fed. App'x 770, 771 (10th Cir. 2010) (quoting *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996)).

Here, Brown's access-to-court claim must fail because he has not alleged he was injured by any actions of the defendants. In his Response, Brown argues defendants took his property and conspired to prevent him from bringing his claim in this court. But Brown never alleges defendants' actions actually prevented him from bringing his claim or "hindered his efforts to pursue a legal claim." *See Lewis*, 518 U.S. at 351. In fact, Brown has demonstrated throughout this case that he has been able to file the necessary pleadings to prosecute his case. Moreover, this court has given Brown many opportunities to file documents out of time and has never failed to consider any of his pleadings because they were filed late. As such, Brown cannot demonstrate he suffered any actual injury necessary to succeed on his access-to-courts claim. Therefore, defendants are entitled to summary judgment. *See id.*

### M. Brown May Not Recover Attorney's Fees

Finally, Brown seeks attorney's fees under 42 U.S.C. § 1997e(d). The court has discretion to direct an award of attorney's fees to the prevailing party in § 1983 actions. 42 U.S.C. § 1988

(2000).[14] But there is no analogous statute providing for attorney's fees to a prevailing party in a *Bivens* action. *See Gleave v. Graham*, 954 F. Supp. 599, 613 (W.D.N.Y. 1997); *see also Kreines v. United States*, 33 F.3d 1105, 1109 (9th Cir. 1994) (holding "§ 2412(d) [of the Equal Access to Justice Act] does not authorize the courts to award attorney's fees against the United States in *Bivens* actions"). The Supreme Court has stated that "a pro se litigant who is *not* a lawyer is *not* entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991); *see also UFCW Local 880-Retail Food Emp'rs Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. App'x 232, 238 (10th Cir. 2009) ("A party must first incur attorney fees before he or she is entitled to an attorney-fee award."). For these reasons, Brown is not entitled to attorney's fees. Even if Brown was otherwise entitled to attorney's fees, he is not a prevailing party in this action, as explained throughout this Order. Therefore, defendants are entitled to summary judgment on Brown's attorney's-fees claim.

## XI. Defendants' Rule 11 Motion

### A. Factual Background

Defendants have filed this Renewed Motion for Rule 11 Sanctions Against Brian Brown (Dkt. No. 344) based on 20 pleadings in which they contend Brown falsely accused defendants or

---

[14]Title 42 section 1988(b) provides:
In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

defense counsel of improperly interfering with his access to the court.[15]  Defendants seek dismissal

of all or any remaining claims brought by plaintiff because of these alleged Rule 11 violations.

Throughout this case, Brown has alleged that defendants, the BOP, and defense counsel,

have engaged in unethical conduct, including, primarily, blocking his access to this court.[16]

Defendants filed their first Motion for Sanctions Under Rule 11 (Dkt. No. 124) on June 4, 2009.

Magistrate Judge Donald Bostwick took the motion under advisement and gave Brown more time

to respond. On January 22, 2010, Magistrate Judge Bostwick denied defendants' motion because

it was not adequately supported by affidavits, depositions, and other evidence. The court allowed

defendants to take Brown's deposition 30 days after they responded to his Amended Complaint and

to inquire into their Rule 11 claims during the deposition. But the court stated, "[p]laintiff is warned,

however, that if violations of Rule 11 are established, either in the prior filings identified by

Defendants in their previous motion (Doc. 154), or in any future filings, the Court may issue

---

[15]The pleadings are: Amended Motion for Leave of Court to Amend the In Forma Pauperis Consent to Withdraw From Funds (Dkt. No. 118); Response re 110 Motion to Strike 109 Third Amended Complaint (titled Motion to Deny Defendant's Request to Strike Plaintiffs Third Amended Complaint (Dkt. No. 119); Motion for Extension of Time to Respond to the Defendants Motion to Compell (Dkt. No. 123); Motion to Appoint Counsel, Motion for Extension of Time (Dkt. No. 128); Motion for Temporary Restraining Order (Dkt. No. 129); Motion to Appoint Counsel (Dkt. No. 137); Motion for Reconsideration re 135 Order on Motion for Temporary Restraining Order (Dkt. No. 141); Response re 139 Motion to Dismiss (Dkt. No. 147); Motion for out of Time Answer to the Defendants Rule 11 Petition for Reasons of: Legal Disability" and equitable Tolling (Dkt. No. 154); Motion for Reconsideration re 135 Memorandum and Order (Dkt. No. 158); Reply to Response to motion re 156 Motion for Permission to Request 2nd Set of Interrogatories, Documents and Admissions of the Defendants (Dkt. No. 165); Motion to Stay Deadlines (Dkt. No. 169); Motion for Extension of Time to File Responses as to 170 Motion for Reconsideration of Court Orders (Dkt. No. 182); Response and Objection re 170 Motion for Reconsideration of Court Orders (Dkt. No. 183); Emergency Motion (Dkt. No. 194); Plaintiff's Objections to Report and Recommendations (Dkt. No. 203); Declaration of Legal Disability (Dkt. No. 213); Plaintiff's Reply to Defendants (frivolous) Response to Plaintiff's Declaration of "Legal Disability" (Doc. 214) (Dkt. No. 222); Notice of Legal Disability Notion of Address Change Request for Equitable Tolling (Dkt. No. 237); Notice of Legal Disability Notice of Address Change Request for Equitable Tolling (Dkt. No. 238).

[16]Brown has made similar allegations that BOP officials, defendants, and counsel have blocked his access to other courts in other cases. *See, e.g.*, *Brown v. Nalley*, No. 2006-CV-00047 (D. Colo. 2006); *Brown v. United States*, No. 07-CV-00717 (D. Colo. 2007); *Brown v. Federal Bureau of Prisons*, No. 08CV501 (D.D.C. 2008); *Brown v. Armenzriz*, No. 07-2154 (N.D. Tex. 2007).

sanctions against Plaintiff which may include, among other possible sanctions, a dismissal of his claims in this action." Dkt. No. 164, pgs. 20-21. Defendants filed their Answer (Dkt. No. 239) on October 22, 2010. On December 7-8, 2010, defendants took Brown's deposition at USP McCreary. Since that time, Brown has filed around 58 pleadings in federal court—over 35 in this case alone. On April 4, 2011, Brown completed and returned the errata sheet to his deposition. Based on his continued allegations that the BOP, defendants, and counsel blocked his access to the court, defendants served a second Rule 11 safe harbor letter on Brown on May 16, 2011. Brown has refused to withdraw his claims that defendants or defense counsel denied him access to the courts.

### B. Legal Standard: Rule 11

Fed. R. Civ. P. 11(b) provides:

> **(b) Representations to the Court**. By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

*Id.* When determining whether to impose sanctions, the district court uses an objective standard; the question is whether a reasonable and competent attorney would believe in the merit of the argument.

*Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1155 (10th Cir. 1991). Whether to

grant sanctions is within the sound discretion of the court. *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993). "Under Rule 11, the person who signs a pleading, motion, or other paper filed with the court, certifies that he or she has conducted a reasonable inquiry into the factual and legal basis for the filing, and that the substance of the filing is well-grounded in fact and law." *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992). Rule 11 "speaks of attorneys and parties in a single breath and applies to them a single standard." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 548 (1991). A pro-se plaintiff is not excused from complying with Rule 11. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). But a person's pro-se status may be taken into consideration when determining whether to impose sanctions. Therefore, the standard of objective reasonableness under the circumstances applies whether the person is an attorney, a pro-se litigant, or both. *See McCormick v. City of Lawrence, Kan.*, 218 F.R.D. 687, 690 (D. Kan. 2003). If the court finds the rule was violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." FED. R. CIV. P. 11(c)(1).

### C. Dismissal is an Appropriate Sanction for Brown's Repeated Rule 11 Violations

Brown cannot demonstrate that any of his denial-of-access allegations against defendants or defense counsel are true. During his deposition on December 7-8, 2010, he admitted he had no evidence that any of the United States Attorneys working on this case, or anyone in the United States Attorneys Office had ever denied him access to the court in this case. And all defendants and counsel have signed sworn declarations stating they have never denied Brown access to the court. Even a cursory look at the docket sheet in this case belies Brown's argument that he was denied

access to the courts. In the five-plus years this case has been pending Brown has filed over 100 pleadings—more than 65 have been filed since February 1, 2010. Further, Brown was not even incarcerated at USP Leavenworth during this suit. It does not appear Brown was denied access at any other prison either. For example, from February 7, 2005, to November 15, 2005, a correctional officer at the Federal Correctional Institution in Florence, Colorado provided Brown over 850 stamps for use in filing his several pleadings. Because defendants did not deny Brown access to the courts, sanctions are appropriate.

When determining which sanction to impose, the court must consider the general purposes behind the sanction, including: "(1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *White v. General Motors, Corp., Inc.*, 908 F.2d 675, 683 (10th Cir. 1990). Deterrence is the primary goal. *Id.* The Tenth Circuit has also established a number of factors relevant to whether dismissal is an appropriate sanction: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1044 (10th Cir. 2005).

Here, dismissal is the appropriate sanction for several reasons. First, Brown has harassed the defendants for over five years with frivolous pleadings and accusations that defendants and counsel denied his access to the courts. Dealing with Brown's allegations and several hundred pleadings have taken a significant amount of the court's time and resources. In many instances Brown filed the same or similar motion several times. *See, e.g*, Dkt. Nos. 9, 55, 128, 137, 148, 317 (appointment

of counsel); 52, 54, 65, 156, 268, 270, 283 (discovery). Brown's culpability is also high in this case. He admitted in his deposition that he has no evidence that defense counsel ever denied him access to the courts, yet he has refused to withdraw his pleadings asserting they did deny him access. And he cannot dispute the fact that he has filed several hundred pleadings in this and other cases in the last six years. This court even warned Brown in its previous ruling on defendants' Rule 11 motion that any established Rule 11 violation would be subject to a possible sanction, including dismissal. Despite that warning, Brown filed at least 10 motions alleging denial of access to the courts. Last, dismissal is the only appropriate sanction in this situation. Brown has indicated he has no funds from which he could pay a fine levied against him. And dismissal better serves to deter Brown from future conduct of a similar nature. Therefore, because all five factors weight heavily in favor of defendants, this court finds dismissal of Brown's remaining claim against defendants (Claim 2) is appropriate. The court notes that dismissal of all claims against defendants would have been appropriate had those claims survived defendants' Summary Judgment motion.

IT IS ACCORDINGLY ORDERED this 7th day of December 2011, that defendants' Motion for Summary Judgment (Dkt. No. 325) is granted in part and denied in part. Defendants' Motion for Rule 11 Sanctions (Dkt. No. 344) is granted, and the remaining claim against defendants is dismissed.

IT IS FURTHER ORDERED that all claims against the unserved defendants, Schlack, Wheeler, and Matthews are dismissed.

IT IS FURTHER ORDERED that plaintiff's Motion for Leave to Perform Full Discovery Following Defendants Deposition of Plaintiff (Dkt. No. 268); Motion by Plaintiff for Special Hearing and Discovery (Dkt. No. 270); and Renewed Motion for Discovery of Evidence and

Affidavit by Plaintiff (Dkt. No. 363) are denied.

IT IS FURTHER ORDERED that plaintiff's Motion to Order Dept of Justice to Allow Access to Legal Document (Dkt. No. 283) is denied.

IT IS FURTHER ORDERED that the Motion by Plaintiff for Clarification of Court Order Doc Order 306 (Dkt. No. 313) is denied.

IT IS FURTHER ORDERED that plaintiff's Motions to Strike Summary Judgment of Thomas Quintana, Michael Gray, Gerald Rosalez, and Lloyd Rush (Dkt. Nos. 367, 368, 369, & 370) are denied.

IT IS FURTHER ORDERED that plaintiff's Motion for Leave to View Original Video (Dkt. No. 373) is denied.

IT IS FURTHER ORDERED that plaintiff's Motion for Appointment of Expert Witness (Dkt. No. 374) is denied.

IT IS FURTHER ORDERED that plaintiff's Motion for Leave to File Counter Rule 11 Sanctions (Dkt. No. 318) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE